UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KERWIN ELLIS,                                          Civil No. 05-499 (PJS/JJG)

               Plaintiff,

v.                                                     MEMORANDUM OPINION AND ORDER

PENNY UNDERDAHL,

               Defendant.

 

Albert T. Goins, Sr., GOINS & WOOD, PC, 301 Fourth Avenue, Suite 478, Grain Exchange Building, Minneapolis, MN 55415, for plaintiff.

Konstandinos Nicklow, MESHBESHER & SPENCE, LTD, 1616 Park Avenue, Minneapolis, MN 55404, for defendant.

Three motions are before the Court. First, defendant Penny Underdahl ("Underdahl") moves under Fed. R. Civ. P. 56 for summary judgment. Second, Underdahl moves under Fed. R. Civ. P. 11 for sanctions against counsel for plaintiff Kerwin Ellis ("Ellis"). Finally, Ellis moves under Fed. R. Civ. P. 15 for leave to amend his complaint.

The parties are familiar with the facts.

*A.  Motion for Summary Judgment*

The Court grants Underdahl's motion for summary judgment with respect to Count I of Ellis's complaint.

Count I seeks to recover for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. In particular, Count I seeks recovery for violation of 18 U.S.C. § 1962(c), which provides:

(c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

To establish that an individual defendant violated § 1962(c), a plaintiff must allege and prove, among other things: (1) that an enterprise existed; (2) that the defendant was employed by or associated with that enterprise; (3) that the defendant participated in predicate acts of racketeering; and (4) that the defendant's actions constituted a pattern of racketeering activity. *See Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003); *United HealthCare Corp. v. Amer. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996).

For the purposes of Ellis's claim, the most important element of § 1962(c) is the requirement that the plaintiff plead and prove the existence of an "enterprise."  RICO is, after all, about *organizations*.  "RICO" is an acronym for the Racketeer Influenced and Corrupt *Organizations* Act.  As the Eighth Circuit has written, "The major purpose behind RICO is to curb the infiltration of legitimate business *organizations* by racketeers."  *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 990 (8th Cir. 1989) (emphasis added).  Thus, to prove that an individual human being violated RICO, the plaintiff must prove that an enterprise existed — an enterprise that "employed" the individual human being or with which the individual human being was "associated."

Two things about this enterprise requirement need be stressed:

First, the enterprise must be separate from the defendant.  As the United States Supreme Court said in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001), "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different

name."  The Eighth Circuit said the same thing in *Atlas Pile Driving*:  "Section 1962(c), which prohibits a 'person' associated with an 'enterprise' from participating in the affairs of the enterprise through a pattern of racketeering activity, has been interpreted as requiring that the person named as the defendant cannot also be the entity identified as the enterprise."  886 F.2d at 995.

Second, the enterprise must be "an ascertainable structure distinct from that inherent in a pattern of racketeering."  *Id.*  Because the commission of a crime by more than one person will always involve some level of association, proof of this characteristic "'avoid[s] the danger of guilt by association . . . [and] ensure[s] that criminal enterprises, which are RICO's target, are distinguished from individuals who associate for the commission of sporadic crime.'"  *Id.* at 996 (quoting *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir. 1987)).

In this case, then, to recover under Count I, Ellis must prove the existence of an enterprise — one that is separate from Underdahl and that has "an ascertainable structure distinct from that inherent in a pattern of racketeering."  Yet Ellis's complaint says nothing about an enterprise, save the following statement in paragraph 85:  "Defendant [i.e., Underdahl] is an individual and is considered an 'enterprise' under 18 U.S.C. § 1961."

This is patently insufficient to meet the requirements of section 1962(c).  In claiming that Underdahl was herself the "enterprise," Ellis failed to plead the existence of an enterprise that is distinct from Underdahl.  And Underdahl herself is obviously not "an ascertainable structure distinct from that inherent in a pattern of racketeering."

For that reason, the Court grants Underdahl's motion for summary judgment on Count I of the complaint.  The Court's ruling makes it unnecessary for the Court to consider the other

-3-

arguments that Underdahl makes in seeking dismissal of this claim, such as the argument that she did not engage in a pattern of racketeering activity.

### B. *Motion to Amend the Complaint*

Ellis seeks to cure the defects in his RICO claim by moving for leave to amend the complaint. In particular, Ellis seeks to amend Count I to allege that the "enterprise" in this case was an association between Underdahl and her boyfriend/partner/husband Erik Evenson.[1] If, indeed, such an association existed, the association could be deemed an enterprise that was separate from Underdahl. In the words of the Eighth Circuit, "[a] collective entity is something more than the members of which it is comprised." *Atlas Pile Driving*, 886 F.2d at 995.

The Court recognizes, of course, that under Fed. R. Civ. P. 15(a), leave to amend a complaint should be "freely given when justice so requires." But a district court may deny leave to amend where amendment would be futile. *See Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003). The Court finds that, in this case, the amendment sought by Ellis would be futile.

There is no evidence in the record before the Court that Underdahl and Evenson acted as an association. Ellis and Underdahl met in 1998, and Underdahl started taking money from Ellis sometime in 1998. Goins Decl. Ex. 2 ¶ 7. The relationship between Ellis and Underdahl lasted until September 1994 — a period of about six years. *Id.* During those six years, Ellis alleges that he made approximately 70 loans to Underdahl totaling $137,000. *Id.* passim & ¶ 105. Yet,

---

[1]The record is not entirely clear about Evenson's relationship to Underdahl. At oral argument, Underdahl's attorney informed the Court that, although Underdahl and Evenson were married in a foreign country, Minnesota does not give legal recognition to marriages performed in that country.

during this entire six-year, 70-loan, $137,000 saga, Evenson makes exactly one appearance in the record:[2]  In September or October of 2003, Underdahl borrowed $2500 from Ellis to make the down payment on a car.  Ellis apparently accompanied Underdahl to the car dealer, where he waited in the car while Underdahl went inside.  Ellis later learned that title to the car was put in Evenson's name.  *Id.* ¶¶ 55-56.

That's it.  On one occasion, five years into her relationship with Ellis, Underdahl used money she borrowed from Ellis to buy something for her boyfriend.  That hardly suggests that the alleged fleecing of Ellis was done through an association of Underdahl and Evenson.  Had Underdahl spent Ellis's money on her children or her sister or to tip her favorite dealer at her favorite casino — all of which may have occurred — that would not mean that she had associated with her children or her sister or the dealer to form an "enterprise."  It would suggest nothing more than that she spent some of her allegedly ill-gotten gains on others.

Ellis also points to the fact that, *after* his relationship with Underdahl ended, and Ellis went to Underdahl's home to try to collect his money, Evenson answered the door, would not let Ellis see Underdahl, and acted in a way that Ellis found intimidating.  *Id.* ¶ 93.  Moreover, Ellis claims that, sometime in 2005, Evenson ran into Ellis at a bar and told him that his dispute with Underdahl should be settled without attorneys.  *Id.* ¶ 94.  This evidence, whether considered

---

[2]Undoubtedly, because Underdahl and Evenson were romantically involved during at least some of the time that Ellis was loaning money to Underdahl, Underdahl mentioned Evenson's name to Ellis on occasion.  For example, in September 2004, during the last meeting between Underdahl and Evenson, Underdahl allegedly told Evenson that she needed him to sign a "settlement agreement" because both Evenson and Underdahl's ex-husband were suspicious of the amount of time that Underdahl and Ellis were spending together.  Goins Decl. Ex. 2 ¶ 90.  But, with the one exception discussed above, the record contains no evidence of any direct involvement by Evenson in Underdahl's financial dealings with Ellis.

individually or as a whole, would not permit Ellis to plead consistent with Rule 11 that, during

the six years when Underdahl was socializing with Ellis and borrowing money from him, she

was employed by or associated with an "enterprise" consisting of an association between

Underdahl and Evenson.

To constitute an enterprise under RICO, the enterprise must have (1) a common or shared

purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure

distinct from that inherent in a pattern of racketeering. *Atlas Pile Driving*, 886 F.2d at 995.  The

evidence cited by Ellis does not come close to suggesting the existence of such an enterprise.  A

comparison with the case chiefly relied on by Ellis — *Handeen v. Lemaire*, 112 F.3d 1339 (8th

Cir. 1997) — is instructive.  In *Handeen*, the Eighth Circuit found that a bankruptcy estate

constituted an enterprise.  The Eighth Circuit explained that "continuity of structure exists where

there is an organizational pattern or system of authority that provides a mechanism for directing

the group's affairs on a continuing, rather than an ad hoc, basis," and emphasized that, in

*Handeen* itself, "[t]he players . . . devised a detailed plan to defraud [the plaintiff]." *Id*. at 1351-

52.

There is nothing like that in this case.  After a full opportunity for discovery, Ellis can

point merely to the fact that, on one occasion during their six-year relationship, Underdahl

apparently spent $2500 of the $137,000 that she borrowed from Ellis on Evenson — and the fact

that, after Underdahl and Ellis ended their relationship, Evenson told Ellis to stay away from

Underdahl.  Ellis has not even pointed to evidence of when Underdahl and Evenson met, when

Underdahl and Evenson first discussed Ellis, or what kind of relationship Underdahl and

Evenson had (if any) during the period 1998 to 2004.  Most importantly, Ellis has pointed to no

evidence that, at any point during that six-year period, Evenson schemed with Underdahl to induce Ellis to make the loans.  (One reason why Ellis may not be able to point to such evidence is that his attorneys inexplicably failed to take the deposition of either Underdahl or Evenson before the discovery cutoff.)

Ellis writes in one of his briefs that, at the time he filed his complaint, he "believe[d] that Mr. Evens[o]n was actively involved in the ongoing pattern of illegal activity but chose not to name him because of the lack of evidence."  Pl.'s Mem. Opp. Summ. J. 34 n.14.  Ellis has learned nothing about Evenson that he did not know when he made that decision.  He was right the first time.  The amendment requested by Ellis would be futile, and thus the Court denies his motion to amend Count I of his complaint.

The Court also notes that the motion for leave to amend was filed too late.  According to the scheduling order in this case, the time for seeking leave to amend the pleadings expired on January 1, 2006, and discovery closed on May 1, 2006.  Ellis's motion to amend Count I relies almost entirely on evidence that was known to Ellis before he filed his complaint in March 2005. There is no reason why Count I of the original complaint could not have included everything that is contained in Count I of the amended complaint.  Nor is there any reason why Ellis could not have pursued this theory by taking the depositions of Underdahl and Evenson.

Ellis's motion to amend Count I of his complaint is denied.

## C.  State-Law Claims

That leaves the state-law claims.

As the parties acknowledge, the Court does not have original jurisdiction over any of those claims. The claims do not arise under federal law, and Ellis and Underdahl are both citizens of Minnesota, so original jurisdiction does not exist under 28 U.S.C. §§ 1331 or 1332 or any other statute. When the RICO claim was pending, the Court had supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), because the state-law claims formed part of the same case or controversy as the RICO claim. However, the RICO claim has now been dismissed.

Section 1367(c) of Title 28 provides that:

(c)     The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —

    (1)     the claim raises a novel or complex issue of State law,

    (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)     the district court has dismissed all claims over which it has original jurisdiction, or

    (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court finds that dismissal of the state-law claims is appropriate under both clauses (2) and (3). In other words, the Court finds that Ellis's state-law claims "substantially predominate" over his RICO claim, and thus, even if this Court had not dismissed the RICO claim, it would still decline to exercise supplemental jurisdiction over the state-law claims under § 1367(c)(2). Of course, the Court has dismissed the RICO claim, and thus the Court also declines to exercise supplemental jurisdiction under § 1367(c)(3).

The Court recognizes that dismissal may have a negative impact on Underdahl.  She has managed, no doubt to her surprise (as well as the Court's), to make it to the discovery cutoff without having her deposition taken.  It is possible that a Minnesota court will allow Ellis to reopen discovery, and Underdahl will have to be deposed, perhaps produce more documents, and perhaps even attend another deposition or two.  But the Court nevertheless concludes that dismissal is appropriate.

First, the Court's main concern is not the strategic interests of the parties, but the appropriate use of the resources of a federal court.  This action has, from the beginning, been predominantly — one might even say entirely — a simple, state-law, debt-collection case.  Ellis (a Minnesota citizen) says that he loaned a lot of money to Underdahl (another Minnesota citizen) and that she has not repaid him.  Underdahl says that the loans were gifts and she owes Ellis nothing.  This action has belonged in state court from day one.  The undersigned alone has well over 300 civil cases pending on his docket — cases that belong in federal court.  Neither he nor any other judge of this District should be required to devote time to run-of-the-mill debt collection actions between citizens of Minnesota.

Second, the prejudice that Underdahl will suffer is most likely that she will have to answer questions at a deposition and perhaps engage in some other discovery, such as attending the deposition of Evenson.  This is typical discovery that should have already been taken in this case.  The Court understands why Underdahl, having been handed a gift by Ellis's attorneys, is reluctant to give it up.  But answering questions at a deposition and engaging in further discovery should not impose much of a burden on Underdahl, and, at the end of the day, the ends

of justice will probably be served if Ellis is not made to suffer because of his attorneys' poor decisions.

Finally, Underdahl bears some responsibility for the situation in which she finds herself. This case managed to survive in federal court only because Ellis filed — and Underdahl failed to move promptly to dismiss — a RICO claim that was frivolous on its face.  Parties should not be able to manufacture federal jurisdiction by bringing a frivolous federal claim along with predominant state-law claims, failing to move promptly to dismiss the federal claim, engaging in over a year of litigation, and then pleading that it is "too late" for the federal court to decline jurisdiction.  Nothing prevented Underdahl from bringing a motion under Fed. R. Civ. P. 12(b)(6) to dismiss the RICO claim the day after the complaint was served.  Given that Count I had not even been *plead* correctly, and given that this case has always been about one friend claiming that another friend failed to repay loans, the Rule 12(b)(6) motion likely would have been granted and the state-law claims dismissed for lack of jurisdiction.  The situation in which Underdahl finds herself could have been anticipated and is to a substantial extent of her own making.

The Court exercises its discretion under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction over the state-law claims.  The Court also denies Underdahl's summary judgment motion as to the state-law claims — and Ellis's motion to amend his complaint to add or expand state-law claims — as moot.  To be clear:  The Court is in no way reaching the merits of any state-law claim or any defense to a state-law claim, and thus neither Ellis nor Underdahl should be prejudiced by application of the doctrines of claim preclusion or issue preclusion.

### D.  Motion for Rule 11 Sanctions

Finally, the Court has before it Underdahl's motion for sanctions under Rule 11.

The Court has given the motion a great deal of consideration, at least as it applies to the RICO count.  That count was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law."  Fed. R. Civ. P. 11(b)(2).  The Court recognizes, as Ellis's counsel have argued, that RICO is a complicated statute; the Court itself finds the statute hard going at times.  But even a cursory glance at 18 U.S.C. § 1962(c) would put a reasonable attorney on notice that a plaintiff who accuses a defendant of violating that section must allege the existence of an enterprise separate from the defendant.

That said, the Court has decided not to impose sanctions.  The Court has been influenced by several factors, three of which deserve mention:

First, the complaint as a whole — this *action* — is not frivolous by any stretch of the imagination.  Even if only a small part of what Ellis alleges is true, Underdahl acted very badly, and Ellis has legitimate and substantial claims against her.  Thus, this is not a case in which an attorney has wasted the resources of the Court or of his opponent by filing a frivolous lawsuit.  Rather, this is a case in which one of four counts of a complaint was frivolous.  The Court does not mean to excuse the conduct of Ellis's attorneys — and the Court recognizes that it has the power to sanction them for including one frivolous count in a non-frivolous complaint, *see Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) — but context is important.

Second, as the Advisory Committee Note to the 1993 amendments to Rule 11 makes clear, "the purpose of Rule 11 sanctions is to deter rather than to compensate," and "sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the

offending person or comparable conduct by similarly situated persons."  Considering all of the factors enumerated in the Advisory Committee Note — including, for example, the fact that the violation appears to have been negligent rather than willful, that the violation was an isolated event, that the violation infected only one count of the complaint and not the entire pleading, that the Court is not aware of any similar conduct by Ellis's attorneys in other litigation, and that there is no suggestion that the attorneys intended to injure — the Court concludes that no sanctions are warranted.

Finally, the Court notes that Underdahl's Rule 11 motion — supported by a brief that was too long and that was, in large part, simply copied from her briefs on the merits — is itself frivolous or near-frivolous as it applies to Ellis's state-law claims.  The Court does not know whether Ellis will eventually recover on those claims, but the claims are far from frivolous.  Rule 11 is not a vehicle for an attorney to submit two briefs on the merits rather than one; it does not exist so that Underdahl can put a 27-page exclamation point on 49 pages of merits briefing.

Considering all of the circumstances, the Court does not believe that Rule 11 sanctions are warranted in this case, either against plaintiff's lawyers for the frivolous aspects of his complaint, nor against defendant's lawyer for the frivolous or near-frivolous aspects of her Rule 11 motion.  Underdahl's Rule 11 motion is denied.

## ORDER

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1.  Defendant Underdahl's motion for summary judgment [Docket No. 29] is GRANTED as to Count I and DENIED AS MOOT in all other respects.  Count I is dismissed with prejudice and on the merits.

2.  Defendant Underdahl's motion for sanctions under Fed. R. Civ. P. 11 [Docket No. 42] is DENIED.

3.  Plaintiff Ellis's motion for leave to amend his complaint [Docket No. 47] is DENIED as to Count I and DENIED AS MOOT in all other respects.  And

4.  All remaining claims are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c)(2) and (3).

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: August 10, 2006                          s/Patrick J. Schiltz
                                                Patrick J. Schiltz
                                                United States District Judge